# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 18, 2010

## AARON WILLIAMS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-B-944      Cheryl Blackburn, Judge**

---

**No. M2009-01194-CCA-R3-PC - Filed December 15, 2010**

---

Pursuant to a plea agreement, the Petitioner, Aaron Williams, pled guilty to four counts of rape of a child, and the trial court sentenced him to an effective sentence of forty-two years in the Tennessee Department of Correction.  The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing.  On appeal, the Petitioner contends:  (1) his conviction was based on a coerced confession; (2) he received the ineffective assistance of counsel; and (3) he did  not knowingly and voluntarily plead guilty.  After a thorough review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Trudy L. Bloodworth, Nashville, Tennessee, for the Appellant, Aaron Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Guilty Plea

This case arises from the Petitioner engaging in sexual conduct with his niece.  A Davidson County grand jury indicted the Petitioner for seven counts of rape of a child and six counts of aggravated sexual battery.  At the Petitioner's plea hearing the State summarized

the evidence supporting the Petitioner's charges as follows:

> Had this matter proceeded to trial this morning we would have presented evidence from [the victim], date of birth 6-1-94. She would have testified that the [Petitioner] resided with her and her mother for periods of time from February 2004 until February of 2005, and that that occurred in two different locations here in Nashville, Davidson County.

> [The victim] would have testified that on multiple occasions the [Petitioner] engaged in sexual activities with her. Those sexual activities including, with respect to Count One, the [Petitioner] performing cunnilingus on the victim, in which he placed his tongue on her genitals. The [Petitioner] admitted that contact with Detective Zoccola, and admitted that that occurred on multiple occasions.

> She would have also testified, as regards to Count Two, that the [Petitioner] placed his finger into her genital region. . . . She would have testified that that occurred on multiple occasions at those residences. The [Petitioner] also admitted, in his interview with Detective Zoccola, that he had placed his finger in her genital regions, including touching of her clitoris and her hymen.

> [In] regard to Count Three, she would have testified that on multiple occasions the [Petitioner] placed his penis in her mouth. The [Petitioner] admitted, in his interview with Detective Zoccola, that on one occasion his penis was against the victim's mouth, that constituting the offense of fellatio.

> And with regards to Count Four of the indictment, she would have testified that on multiple occasions the [Petitioner] rubbed his penis over her genital region and between her genital lips. The [Petitioner] admitted, in his detailed statement to Detective Zoccola, that that behavior occurred on multiple occasions as well and that his penis would have penetrated her genital lips.

Pursuant to a plea agreement, the Petitioner pled guilty to four counts of rape of a child, a Class A felony, and the remaining counts were dismissed.

At the beginning of the plea hearing, the trial court asked whether the Petitioner understood that, because he was under oath, he could be charged with perjury if he answered any questions untruthfully, and the Petitioner said, "Yes." The State announced the plea

agreement in the case, and the Petitioner agreed that the announcement was consistent with his understanding of the disposition of his charges. The trial court then asked the Petitioner whether he was under the influence of drugs or alcohol, to which the Petitioner responded that he was on prescription medication. Based upon this response, the trial court asked further questions:

The Court:     Do you understand what you're doing here today?
[Petitioner]:  Yes
The Court:     What are you in fact doing here today?
[Petitioner]:  Saying I committed a crime.
The Court:     Are you pleading guilty today?
[Petitioner]:  Yes.
The Court:     Do you understand what sentence you're receiving today?
[Petitioner]:  Yes.
The Court:     What sentence is that?
[Petitioner]:  Forty-two years.
The Court:     Okay. Very good. Are you suffering from any mental illness?
(Defendant and defense counsel confer)
[Petitioner]:  I guess the sickness I had all my life.
        . . .
[Counsel]:     He has epilepsy - -
[Petitioner]:  And [A]ttention [D]eficit [D]isorder.
[Counsel]:     - - and [A]ttention [D]eficit [D]isorder.
The Court:     All right. But, so you do understand what you're doing here?
               That's the main thing.
[Petitioner]:  Yeah.

The trial court then asked the Petitioner whether he was satisfied with Counsel's representation and whether the charges and range of punishment for each charge were explained to him. The Petitioner said, "Yes." The Petitioner testified that he understood the consequences of these convictions and the rights he was waiving by pleading guilty. The trial court asked whether any promises had been made to the Petitioner in exchange for pleading guilty or whether the Petitioner had been forced or threatened to plead guilty, to which the Petitioner responded in the negative. The Petitioner agreed that he had reviewed the plea agreement with Counsel and did not have any questions. The Petitioner affirmed that his signature was at the bottom of the plea agreement. The Petitioner testified that he signed the plea agreement "freely and voluntarily."

The trial court asked Counsel whether she believed that the Petitioner understood the plea and consequences of his guilty plea and was pleading "freely and voluntarily." Counsel

responded that she did. Finally, the Petitioner testified that he was guilty as to each of the four counts of rape of a child. The trial court found the Petitioner guilty and sentenced him to twenty-one years for each count, with counts one and two to run concurrently and counts three and four to run concurrently but consecutively to counts one and two, for a total effective sentence of forty-two years to be served at 100%.

## B. Post-Conviction Hearing

The Petitioner filed a petition for post-conviction relief claiming that his conviction was based on a coerced confession, that he received the ineffective assistance of counsel, and that his guilty plea was not knowingly and voluntarily entered. The Petitioner raised other issues in his petition, but, because he does not maintain those claims on appeal, we will address only the aforementioned claims. The post-conviction court held an evidentiary hearing wherein the following evidence was introduced: The Petitioner's attorney ("Counsel"), testified that she worked in the Public Defender's Office and was appointed to represent the Petitioner. Ross Alderman and, later, Katie Weiss assisted Counsel with the case. Counsel also had assistance from an office investigator and a social work intern.

Counsel testified that the Petitioner told her he had Attention Deficit Disorder but never requested she file a motion to have the Petitioner mentally evaluated. Counsel said she considered filing such a motion, but, after discussing the matter with colleagues familiar with the Petitioner, she decided against doing so. She testified that she based this decision on her impression that the Petitioner understood the charges against him and could assist in his defense. She elaborated, " He was not someone . . . I deemed appropriate for that. I didn't think he had any indication that he needed any kind of evaluation from my discussions with and the input I had from other people."

Counsel testified that the office investigator gathered information in another state on the Petitioner that included a criminal record. As to the investigation in Nashville, Counsel said there was not much to do because the victim was very young, and the victim's mother was very hostile toward the defense. Counsel said that the Petitioner did not have "anyone specific he wanted me to talk to in terms of the case" and specifically that he never requested she interview Thomas Million, a man also accused by the victim of sexual abuse.

Counsel testified that she reviewed all the discovery materials with the Petitioner during their meetings. They discussed the motions and their possible impact upon his case. They discussed the charges against Million and how they related to the Petitioner's case. The Petitioner and Counsel together listened to the recordings of the controlled call and interview with Detective Zoccola. They discussed the difficulty of overcoming the fact that the Petitioner confessed to these crimes twice, once on the controlled call to his sister and then

again in a taped confession to Detective Zoccola. They also discussed the trial and the consequences of being found guilty by the jury at trial and discussed all plea offers from the State.

Counsel recalled that the State made an initial offer of thirty-five years, and Counsel conveyed the offer to the Petitioner, wrote down the range of punishment, and discussed the offer with the Petitioner. The Petitioner, however, was not interested in this offer because he believed it was "too much time," so he declined the offer. At some point, the State withdrew the offer because the Petitioner was proceeding to trial.

In preparing for trial, Counsel testified that she discussed the case extensively with Katie Weiss, the attorney assisting her. She visited with the Petitioner, and they listened to the recording of a controlled phone call between the Petitioner and his sister, the victim's mother, and a recording of the Petitioner's confession to the detective. Counsel researched, drafted, and filed three motions and prepared questions for the witnesses for these motions. Counsel reviewed the case file and information about Million. She prepared questions for voir dire, cross-examination, and, in the event the Petitioner testified, a direct examination of the Petitioner. Counsel also discussed possible appellate issues with an attorney in her office who handles appeals.

Counsel recalled that the State provided her with information that the victim had also accused Million of sexual abuse shortly after the Petitioner told Counsel he thought Million was the person who had sexually abused the victim. Counsel used the information the State provided about the charges against Million as the basis for a motion under Rule 412, seeking permission to introduce evidence of the victim's accusations against Million. Counsel said the information regarding these allegations was "really important," emphasizing that they proceeded to trial based, at least in part, on their hope their Rule 412 motion would be granted. Counsel recalled that the Rule 412 motion, as well as two other motions to suppress the Petitioner's two confessions, were heard the day of trial. Counsel acknowledged she would have preferred for the motions to be heard prior to the day trial was set to begin, but the victim and her mother, who lived out-of-state, could not be transported in time to hold such a pre-trial hearing. The trial court denied the Rule 412 motion and the two motions to suppress.

Counsel discussed with the Petitioner the trial court's rulings on the motions. Counsel recalled that she explained to the Petitioner that his recorded confession to the detective and his admissions to his sister during the recorded controlled call would be presented to the jury, making it difficult to get a favorable outcome. Counsel and the Petitioner discussed what issues he might have on appeal if he were convicted, and Counsel explained the appellate court's limited review of a jury conviction. Counsel testified that the Petitioner understood

the possible punishment if he were convicted, and she described the Petitioner "as a full participant and very active in the decision making process."

After their discussion, the Petitioner decided to accept a plea offer from the State. Counsel testified that she reviewed every line of the plea agreement with the Petitioner. Counsel said that the trial court took a recess, so she had plenty of time to review the plea agreement with the Petitioner, saying they were not "rushed." Counsel said that, based upon the Petitioner's statements to Counsel and their discussion regarding the plea, she believed the Petitioner understood the plea offer.

Counsel testified that she was aware that the Petitioner was alleging that Larry Jones, a court officer, pressured the Petitioner to plead guilty. Counsel recalled observing the Petitioner and Jones interacting in "a very friendly kind of way" on the day of the plea hearing. She took the Petitioner aside and told him:

> [I]f you don't want to talk to anyone, you don't have to. You know, I can tell everyone to leave you alone, and you can just talk to me and Ms. Weiss. And if you want me to do that, then I can tell everyone that I asked them not to speak with you and I needed you to concentrate on what we were doing that day.

The Petitioner declined her offer saying "it was okay." Counsel explained that she made the offer because, given the circumstances, she did not know if the Petitioner wanted to make "small talk," so she offered a resolution. Counsel said that Jones had a very "friendly disposition" and often "chat[ted]" with inmates while they were waiting to go into court. Counsel acknowledged that Jones and the Petitioner may have had conversations outside her presence but that, for most of the morning, the Petitioner was in court at Counsel's table.

Counsel testified that she was aware of the Petitioner's concerns regarding the victim's mother's employment with the sheriff's department. Counsel said that one of the reasons the Petitioner was in isolation was due to his fear of repercussions given the victim's employment with the department. After the plea, Counsel contacted one of the wardens at the Tennessee Department of Correction to request that the Petitioner not be housed with the victim's father or any of the father's family members.

On cross-examination, Counsel agreed that a substantial amount of evidence implicated the Petitioner, including the victim's statements, the victim's mother's observation of the victim leaving the Petitioner's bedroom early in the morning, the victim's fresh complaint, statements made for the purpose of medical diagnosis and treatment, the Petitioner's letters to family members admitting sexual activity, and the Petitioner's admissions during the

controlled call with his sister and during the interview with Detective Zoccola. Counsel also agreed that this evidence provided exposure to criminal penalties well beyond what the Petitioner received in this case. Counsel agreed that enhancement factors and criteria for consecutive sentencing were also present in the facts of this case.

Counsel testified that nothing in the Petitioner's demeanor or comments indicated he was not competent to plead guilty. She also testified that the Petitioner never told her he was being coerced into entering the plea agreement. Counsel believed that the Petitioner's guilty pleas were knowingly and voluntarily entered.

The Petitioner testified that, at the time of the post-conviction hearing, he was taking Tegretol for seizures three times a day and Imipramine for Attention Deficit Disorder twice a day. The Petitioner said that, on the day of the guilty plea hearing, he was also taking Cogentin for his bipolar disorder. The Petitioner said that the Cogentin made him feel "out of it" but that he did not know whether it would have affected his understanding of the plea. The Petitioner explained why he did not tell the trial court that he was on Cogentin at the hearing:

> Well, I leaned over to [Counsel] and I had asked her about, you know, I take my seizure medication and do I have to tell them all the medication I take because there's a whole bunch of other medications I take for, you know, arthritis and other kinds of other stuff. But - - and she was just like, well, just, you know, the medication - - your seizure medication. And I was like, okay. So I stated the seizure medication.

The Petitioner said that he was confused on the day of the guilty plea hearing because he normally was placed in a cell by himself when transported to court, but, at the last few court appointments, he had been placed in a cell with other inmates and, on the day of the hearing, he was once again alone. The Petitioner testified that, throughout his multiple discussions with Counsel, he consistently expressed his desire for a jury trial.

The Petitioner recalled that the State made an initial plea offer and that Counsel discussed the offer and range of punishment. The Petitioner said he wanted a jury trial despite the fact he would serve 100% of his sentence if he was found guilty of rape of a child. The Petitioner agreed that he had the opportunity to discuss with Counsel the State's offer and the consequences of rejecting the offer and that he chose to reject the offer.

The Petitioner testified that early, in the case, he requested that Counsel file a motion to suppress the controlled call with his sister, the victim's mother. The Petitioner said that, before the controlled call, he spoke with his sister on the phone, and she made threats of

violence that placed the Petitioner in fear, and this was the basis for the motion to suppress. The Petitioner testified that he also felt threatened while incarcerated for these charges due to his sister's position in the Sheriff's Department. The Petitioner said that, upon his initial entry into jail, an officer threatened him, so he requested protective custody.

The Petitioner testified that he discussed his history of mental illness with Counsel. The Petitioner said he talked with Counsel about the fact that he was physically abused and molested as a child and that he was diagnosed as learning disabled and emotionally handicapped. He also said that he attended counseling until he was eighteen years of age.

The Petitioner recalled that, on the day of the guilty plea hearing, before the trial court heard the Petitioner's motions, he was in a holding cell where the court officer Larry Jones was also present. The Petitioner said that he thought Jones worked for the Sheriff's Department although Jones was not wearing a uniform. The Petitioner testified that he spoke with Jones about his family and "the situation" while waiting to enter the courtroom. He told Jones that he did not want his sister and the victim to have to testify but that he did not want to accept the State's plea offer. The Petitioner said that, in response, Jones agreed with him and said, "you don't want to put, you know, your family through this." The Petitioner described it as "an okay conversation" but said he was uncomfortable because he was handcuffed, and, due to the nature of his charges, he constantly feared being physically assaulted. Even though Jones never threatened the Petitioner or raised his voice toward the Petitioner, the Petitioner believed Jones was a threat because he thought Jones was employed by the Sheriff's Department.

The post-conviction court questioned the Petitioner's description of his conversation with Jones by asking, "So it was a very pleasant conversation under the circumstances?" The Petitioner replied, "Yeah. [] I was uncomfortable, but I was willing to talk because, you know, someone was right there and that's about the only thing you can do in that room, I guess." The Petitioner testified that his conversations with Jones occurred before he discussed the plea offer with his attorneys and pled guilty in court. The Petitioner said that he did not tell anyone that the only reason he was pleading guilty was because Jones had pressured him to do so.

The Petitioner agreed that the judge asked him at the guilty plea hearing whether he understood what he was doing and the Petitioner said yes. The Petitioner said he understood that he was agreeing to serve a forty-two year sentence, but he was not "really paying attention too much" to what the trial court was saying.

The post-conviction court asked the Petitioner whether he answered the trial court truthfully during the plea colloquy and the Petitioner said, "[N]o." When asked why he would lie to the trial court, he responded, "I thought that was the best thing to do at the time, I

guess."

Larry Jones, a criminal court officer, testified that he had been a court officer for twelve years. Jones recalled speaking with the Petitioner on the day of his guilty plea hearing and said that it was not uncommon for him to engage in conversation with defendants. He explained that he sometimes talks to defendants who appear nervous and show an interest in talking. Jones recalled that the Petitioner told Jones that he did not want to put his family through a trial and asked what Jones thought. Jones told the Petitioner, "[I]f it was me and I was guilty, instead of putting my family on trial, I would just go ahead and take a plea." Jones said that he did not know the details of the Petitioner's plea agreement

Jones testified that the Petitioner did not appear to be unstable or in distress at the time of their conversation. Jones said that the Petitioner never asked Jones whether he worked with the Sheriff's Department and mentioned neither his sister working in the Sheriff's Department or any threats he had received.

Based upon this testimony, the post-conviction court denied relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner asserts: (1) his conviction is based upon a coerced confession; (2) he received the ineffective assistance of counsel; and (3) his guilty plea was not entered knowingly and voluntarily.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

## A. Coerced Confession

In Petitioner's amended petition, he claims that "his conviction was based on the use of a coerced confession." The post-conviction court found this claim lacked merit based upon the fact that the Petitioner did not present any proof as to this issue at the post-conviction hearing and the issue has been previously determined.

Matters previously determined are not a proper subject for post-conviction relief. *Forrest v. State*, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." T.C.A. § 40-30-106(h) (2006). Our Supreme Court has defined a "full and fair hearing" as one where "a petitioner is given the opportunity to present proof and argument on the claim." *Carter v. State*, 958 S.W.2d 620, 625 (Tenn. 1997) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)).

The Petitioner, through Counsel, filed two motions to suppress. The first claimed that his confession to his sister, the victim's mother, during a controlled call was based upon coercion and threats made by the Petitioner's sister before and during the call. The second motion to suppress alleged that the detective "deceived" Petitioner about the Petitioner's right to counsel. The morning the Petitioner's trial was to commence, the trial court denied these motions after hearing the Petitioner's evidence and argument through Counsel supporting these motions. Thus, the Petitioner was given the opportunity to present evidence and give argument about his claim that his confessions were coerced. Further, the Petitioner did not appeal the trial court's denial of his motions. We conclude that the trial court correctly found that the Petitioner's claim of a coerced confession had previously been determined. The Petitioner is not entitled to relief as to this issue.

## B. Ineffective Assistance of Counsel

The Petitioner argues that he received the ineffective assistance of counsel because Counsel failed to fulfill two of the Petitioner's requests: (1) that Counsel interview Million; and (2) that Counsel file a motion requesting a mental evaluation for the Petitioner. The State responds that Counsel's performance was not deficient and that the Petitioner failed to prove he suffered prejudice as a result of Counsel's actions.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following

two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of

strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## 1. Failure to Interview Million

The Petitioner argues that Counsel failed to adequately investigate the case and interview potential witnesses whom the Petitioner requested Counsel interview. Specifically, he testified that Counsel did not interview Million, a man accused in a separate case involving the same victim. In regard to this issue, the post-conviction court noted that the Petitioner did not testify about this issue or present testimony from Million. The post-conviction court found that Counsel's testimony was credible when she testified that she retained the services of an investigator and that the Petitioner did not provide the name of any individual he wanted Counsel to interview.

Indeed, the record supports the post-conviction court's findings of fact. "When a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id*. The post-conviction court may not speculate "on the question of ... what a witness's testimony might have been if introduced" at trial. *Id*.; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995). The Petitioner failed to present at the post-conviction hearing Million or any other witness he claims Counsel should have interviewed. Moreover, Counsel, through open discovery, had access to the allegations against Million and used that information as the basis for a Rule 412 motion. We agree with the post-conviction court's finding that the Petitioner failed to establish by clear and convincing evidence that Counsel's representation fell below the standards of competent representation. The Petitioner is not entitled to relief as to this issue.

## 2. Failure to Request a Mental Evaluation

Next, the Petitioner argues that Counsel failed to file a motion to have the Petitioner

mentally evaluated after he requested she do so. As to this issue, the post-conviction court found:

> [The] Petitioner testified that he was taking medication for bipolar disorder at the time of his plea, but he did not indicate that this medication interfered with his judgment on the day of the plea. . . . [The trial court] addressed [the] Petitioner's mental diagnoses during the plea colloquy.

> Further, [the] Petitioner's trial counsel testified that she considered seeking a mental evaluation but after conferring with [others], they decided that one was not warranted in light of the fact [the] Petitioner understood his charges and was able to assist his defense counsel. The Court credits the testimony of trial counsel.

We conclude the evidence does not preponderate against the post-conviction court's finding on this issue. Based upon the Petitioner's statements regarding mental health illness, Counsel considered a mental evaluation. She discussed it with others in her office who also had had contact with the Petitioner including a social worker who was working as an intern in the office. Based on her own experience with the Petitioner, as well as that of her colleagues who had come into contact with him, Counsel did not file a motion for a mental evaluation because the Petitioner could aid in his defense and understood the nature of the charges. Counsel testified that the Petitioner never requested she file a motion for a mental evaluation. The post-conviction court credited Counsel's testimony. At the guilty plea hearing, the trial court inquired into the Petitioner's mental health and ability to understand the plea he was entering and found that the Petitioner understood the plea agreement and its consequences.

We conclude that the evidence does not preponderate against the post-conviction court's finding that the Petitioner did not demonstrate by clear and convincing evidence that Counsel's representation was ineffective. The Petitioner is not entitled to relief as to this issue.

### C. Guilty Plea

Next, the Petitioner contends that his plea was not voluntarily entered because a court officer pressured him to accept the State's plea offer and because he was on medication at the time of the guilty plea. The State asserts that the Petitioner knowingly and voluntarily pled guilty to these charges.

When evaluating the knowing and voluntary nature of a guilty plea, the United States

-13-

Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31(1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). The circumstances include:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (*citing Caudill v. Jago*, 747 F.2d 1046, 1052 (6th Cir. 1984)). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Id.*

### 1. Coercion by Court Officer

In the case under submission, the post-conviction court found:

> [The] Petitioner conceded that Mr. Jones did not threaten him. [The] Petitioner testified that his conversation with Mr. Jones was held in the holding area where attorneys and other inmates entered and exited during the conversation, so he and Mr. Jones were only alone for [a] brief period. [The] Petitioner also testified that the conversation was "not a mean tone." When the Court asked [the] Petitioner how specifically Mr. Jones put pressure on him to plead guilty, [the] Petitioner merely responded that it was because they were alone in the room.

> Not only does [the] Petitioner's post-conviction testimony belie his allegation but so does [the] Petitioner's plea hearing transcript. During the plea hearing, the Court specifically inquired whether "anyone forced you or threatened you in any way to enter into this agreement?" and [the] Petitioner responded, "No."

> Further, Mr Jones testified at [the] Petitioner's post-conviction hearing. . . . [The] Petitioner approached Mr. Jones and stated that he did not want to put his family or the child through the embarrassment of a trial in open court and asked Mr. Jones what he should do. Mr. Jones testified that he responded to

-14-

[the] Petitioner by saying that "if it was me and I was guilty that instead of putting family on trial I would go ahead and take the plea."

The Court finds the testimony of Mr. Jones to be credible. In light of [the] Petitioner's own testimony and the testimony of Mr. Jones, the Court finds that [the] Petitioner has failed to establish by clear and convincing evidence that his plea was coerced. The evidence before the Court indicates that [the] Petitioner's plea was made knowingly and voluntarily.

Our review of the record supports the conclusions of the post-conviction court. The Petitioner initiated the conversation with Jones by telling Jones he did not want to put his family through a trial and asking for Jones's opinion. Jones agreed with the Petitioner and said that he also would not want to put his family through a trial. Jones did not raise his voice or threaten the Petitioner. The Petitioner did not tell Counsel or the trial court, at the time of the guilty plea hearing, of any coercion or threats from Jones, even when directly asked by the trial court while the Petitioner was under oath. The Petitioner testified at the guilty plea hearing that his guilty plea was entered freely and voluntarily and that he had not been pressured to accept the plea offer.

The post-conviction court found Jones's testimony was credible. Further, the post-conviction court found the Petitioner's testimony at the guilty plea hearing credible when he testified that his plea was voluntary. It is not the province of this court to re-weigh a trial court's credibility determination, as that decision is best made by the trial court. *State v. Holder*, 15 S.W.3d 905, 912 (Tenn. 1999). Following our review of the record, we conclude that the Petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that his plea was entered knowingly and voluntarily. Thus, the Petitioner is not entitled to relief as to this issue.

## 2. Medication

Finally, the Petitioner claims that his plea was not knowing and voluntary because he was taking Cogentin for his bipolar disorder on the day he entered his guilty plea. As previously discussed, the post-conviction court found the Petitioner's testimony unpersuasive in that the Petitioner stated he was taking Cogentin but did not indicate that it affected his ability to understand the nature and consequences of his guilty plea. Other than the Petitioner's statement that he was taking Cogentin and it made him feel "out of it," there is no evidence in the record indicating the side effects of Cogentin and whether this medication would affect the Petitioner's ability to knowingly and voluntarily enter a guilty plea. *See Bobby Rayle v. State*, No. E2006-01366-CCA-R3-PC, 2007 WL 1966021, at *4 (Tenn. Crim. App. July 9, 2007), *perm. app. denied* (Tenn. Oct. 15, 2007) (finding the petitioner not

entitled to post conviction relief on this issue when expert testimony was not presented as to the effects of medication). The trial court, upon hearing the Petitioner was on seizure medication during the guilty plea hearing, asked further questions to ascertain whether or not the Petitioner understood the guilty plea. Counsel testified that, in reviewing the plea agreement, the Petitioner did not appear confused about the plea agreement, and he described the Petitioner as an "active participant." Jones testified that the Petitioner did not appear to be in distress or unstable the day of the guilty plea hearing.

We conclude that the evidence does not preponderate against the findings of the post-conviction court. Thus, the post-conviction court properly denied the Petitioner's petition for post-conviction relief. The Petitioner is not entitled to relief as to this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied the Petitioner's petition for post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE